**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**FRANK G. COLUCCI,**

      **Plaintiff,**

**v.**                                                                                                             **Case No.  8:04-cv-956-T-TBM**

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

## O R D E R

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. For the reasons set out herein, the decision is reversed and remanded for an award of benefits.

I.

Plaintiff was fifty-three years of age at the time of his second administrative hearing. He stands 6', 1" tall and weighed approximately 255 pounds. Plaintiff has a high school education and police academy training. His past relevant work was as a police officer. Plaintiff applied for disability benefits in September 1999, alleging disability as of July 24, 1998, by reason of a fractured left patella, a herniated disc at L5-S1, and right wrist strain. The Plaintiff's application was denied originally and on reconsideration. The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). By his

decision of March 15, 2001, the ALJ found Plaintiff not disabled.  (R. 209-14).  Plaintiff appealed this decision.  While the appeal was pending, Plaintiff filed another application for benefits on July 27, 2001.  Thereafter, the Appeals Council granted Plaintiff's request for review as to the first application and remanded the case to the ALJ with instructions to consider treating and examining source opinions in the expanded record, evaluate Plaintiff's subjective complaints, consider the combined effect of Plaintiff's limitations, and to obtain additional evidence concerning Plaintiff's impairments.  Additionally, the Appeals Council construed Plaintiff's subsequent claim as a duplicate and instructed the ALJ to consolidate both applications.  (R. 247-48).

        The ALJ then conducted a second hearing.  In essence, Plaintiff again claimed that he could no longer work at any job after he slipped and fell on a waxed floor at work in July 1998, thereby breaking his left kneecap and injuring his back.[1]  The year previous, Plaintiff had undergone two surgeries in that leg to repair a dislocated kneecap and torn quadricep, sustained when he slipped on ice.  Plaintiff testified that arthritis was setting in and that the knee ached, buckled, and gave out on him.  He also testified that he suffered constant pain and stiffness in his back, which had worsened since the fall in 1998.  He described the pain as starting in the lower back, then going down the left hip, buttock, and to his ankle.  He also suffered lesser pain on his right side.  Plaintiff estimated that the pain was an 8 or 9 on a scale of 1 to 10 at its worst and at a level 3 at its best.  Activity such as walking, bending, and lifting aggravated his pain, while rest in a recliner or lying down made it manageable.

---

[1] Plaintiff's testimony at the second hearing was essentially the same as that given in the first hearing.  See (R. 440-62).

2

Plaintiff takes Celebrex, Relafen, Motrin, Flexeril, Ultram, and Advil for the pain. He also complained of back spasms that would come and go, for which he used a frozen gel pack.

At the time of the hearing, Plaintiff, a police officer for twenty-eight years, was receiving lifetime income from his disability pension with the New York State Police and Fire System. He had an outstanding Workman's Compensation claim for the continuation of his medical care benefits as well.[2]

Plaintiff estimated he could walk comfortably for about half a mile and stand for about 30-40 minutes without too much pain. He estimated he could sit for about half an hour before he would have to move about. Sleep is difficult because of his pain. He takes a muscle relaxer, which helps a little, but he only sleeps for three or four hours per night. He is able to drive, but he has some difficulty getting in and out of the car, and during trips he must stop at rest areas and walk around. According to Plaintiff, the medication causes him to suffer heartburn, for which he takes Ranitidine.

Plaintiff lives in a house with his wife. He does little cooking apart from microwaving or grilling. He hires someone to do the yard work. Plaintiff was an avid golfer before he was hurt, but he is no longer able to golf because of his back. Plaintiff estimated that he spends eight to ten hours of day watching television, and he reads newspapers but not books. He accompanies his wife grocery shopping and to the mall. They also go out to eat from time to time, and take in a movie, where Plaintiff is able to sit for about an hour and a half in stadium seating if he can stand up as needed. He attends religious services, but he is

---

[2]Although not before the ALJ, Plaintiff prevailed on that claim upon a finding that he was 100% disabled. See (R. 428-31).

unable to kneel. Plaintiff is able to take care of his daily personal needs such as showering, shaving, and dressing. See Plaintiff's testimony (R. 466-84).

The ALJ next took testimony from Dr. Owen Linder, a medical expert (hereinafter "ME"), who testified as to the Plaintiff's diagnoses documented in the record and opined that Plaintiff's spinal and knee problems did not meet the listing level of severity. The ME further opined that the Plaintiff's functional limitations precluded heavy and medium manual labor but that Plaintiff could perform a "narrow" range of light work. In addition to limitations for non-use of the spine and less than full range of motion in the knee, the ME testified that Plaintiff had environmental restrictions including the avoidance of vibration, unprotected heights, and extremes of temperature. See ME's testimony (R. 484-88).

The ALJ also took testimony from Joyce Courtright, a vocational expert (hereinafter "VE"), who testified in pertinent part upon an assumption of an individual approaching advanced age with Plaintiff's educational and work experience; diagnosed with degenerative disc disease with low back pain, post hairline fracture of the left kneecap, and right arm pain; and who retained the ability to lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit six hours in an eight-hour day with the "unlimited inability" to push and pull with both hands;[3] and occasionally climb, balance, stoop, kneel, crouch, crawl but should avoid uneven flooring, cluttered environments, and long periods of running or jumping on hard services. Based on that assumption, the VE opined that Plaintiff would be unable to perform his past relevant work but could perform work as a security guard

---

[3]This appears a misprint when compared to the assessment cited by the ALJ which finds no limitation in pushing or pulling. See (R. 361).

and unskilled [light] work as a cashier or bench assembler, as well as wrapping and packaging work. While these jobs may require the climbing of ladders or working at unprotected heights, they did not involve other environmental factors. Regarding the availability of sedentary work, the VE indicated that if there were transferable skills, the grids dictated a finding of disability. See VE's testimony (R. 489-95).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of July 26, 2002, the ALJ determined that while Plaintiff has severe impairments related to lumbar spine and left knee injuries, degenerative disc disease, low back pain, and right arm pain, he nonetheless had the residual functional capacity to perform light work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 16-24). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental

impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a

reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) Did the ALJ err in failing and refusing to give proper weight to the diagnoses and opinions of Plaintiff's treating orthopedist?

(2) Does the new, material evidence of a finding of 100% disability by Worker's Compensation support a "disabled" decision?

By his first claim, Plaintiff urges that the ALJ erred in relying on the opinions of nonexamining doctors in fashioning his residual functional capacity[4] assessment for light work to the exclusion of the opinions of treating orthopedist, Louis Bouillon, M.D. By Plaintiff's argument, this doctor's assessment, uncontradicted by other treating doctors, would

---

[4]Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. Lewis, 125 F.3d at 1440.

prevent him from performing light exertional work and, in any event, from working on a sustained basis eight hours a day.[5]

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. § 404.1527(d)(2). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause for rejecting a treating source's opinion may be found where such opinion is not supported by the evidence or where the evidence supports a contrary finding. Lewis, 125 F.3d at 1440; Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). Additionally, good cause may be found where the doctor's opinions are conclusory or internally inconsistent. Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532-33 (11th Cir. 1991); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor, 786 F.2d at 1053.

Upon careful consideration, I conclude that Plaintiff is entitled to relief on this claim. While the ALJ stated that he was giving *more weight* to the opinions of nonexamining

---

[5]By Dr. Bouillon's assessment, Plaintiff had significant limitations in sitting, standing, and walking. In March 2000, this doctor noted that Plaintiff could sit for less than one hour at a time and only three hours total in an eight-hour workday, and stand/walk for less than one hour at a time for a total of three hours in an eight-hour workday. He also noted that Plaintiff could lift up to ten pounds frequently and from ten to nineteen pounds occasionally, but was unable to push, pull, bend, squat, crawl, or climb. (R. 392-93).

doctors and *great weight* to the opinions of the nonexamining ME, the decision does not reflect an express statement as to the weight given to the opinions of Dr. Bouillon. The decision also fails to include a clear statement of good cause for rejecting the assessments of this treating doctor, who the ALJ acknowledged found Plaintiff incapable of sitting, standing or walking for sufficient hours to complete an eight- hour workday.[6] While the Commissioner contends that the ALJ articulated adequate reasons for rejecting Dr. Bouillon's opinions, she fails to point to specific reasons relied on by the ALJ for discounting the doctor's functional assessments and cites only to the opinions of the nonexamining doctors and the nonexamining ME. In this circuit, the reports of reviewing nonexamining doctors do not constitute substantial evidence on which to base a decision; nor do such provide the necessary good cause required to reject or discount a treating doctor's opinion. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Indeed, opinions of nonexamining doctors, when contrary to those of examining doctors are entitled to little weight. See id. (quoting Sharfarz v. Bowen, 825 F.2d at 280). Here, it is apparent that the ALJ based his residual functional capacity determination on the assessment of a nonexamining state agency doctor and the

---

[6]As the decision reflects, the ALJ did not wholly ignore the treatment by Dr. Bouillon, and, with one possible error, his recitation of the findings by this doctor is reasonably accurate. The ALJ did, however, ignore the import of the doctor's findings, and the clear implication from the decision is that despite this doctor's clear findings of significant limitations in sitting, standing, and walking, the ALJ chose to rely instead on the opinions of nonexamining doctors. One conclusion by the ALJ regarding Dr. Bouillon's opinion deserves additional comment. Notably, the ALJ concluded that Dr. Bouillon found Plaintiff was capable of sedentary work. See (R. 18). I find this incorrect. As I read this evaluation, Dr. Bouillon intended to indicate that Plaintiff could not return to sedentary work as he "cannot sit for more than 10 min periods." See (R. 403-06). As reflected in the hearing transcript, given his transferable skills, Plaintiff's ability to perform sedentary work would not appear to salvage the ALJ's decision in this instance. See (R. 493).

opinion of the nonexamining ME to the exclusion of the opinions of Dr. Bouillon.  That was error.[4]  The ALJ's reliance on those opinions does not provide the necessary substantial evidence to support his conclusion under the applicable standard, nor does it provide the good cause necessary to reject the doctor's opinions.  See Lamb, 847 F.2d at 703.  Because I conclude that the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.  See MacGregor, 786 F.2d at 1053.  When Dr. Bouillon's opinions regarding Plaintiff's functional capacity are excepted as true, Plaintiff's disability is established.  Thus, a remand for an award of benefits is appropriate.[5]

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the

---

[4] The ALJ also erred by failing to state with particularity the weight accorded Dr. Bouillon's opinions and the reasons therefore.  See Sharfarz, 825 F.2d at 279; MacGregor, 786 F.2d at 1053.

[5] In light of this ruling, Plaintiff's second contention need not be addressed.

Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 12th day of July 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record